**R.F., Petitioner,**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Jan. 9, 2004.

Decided March 2, 2004.

Jesse D. Searfoss, Reading, for petitioner.

Rachel H. Meaker, Reading, for intervenor, Berks Cnty. Children and Youth.

BEFORE: PELLEGRINI, J., COHN, J., and FLAHERTY, Senior Judge.

OPINION BY Judge PELLEGRINI.

R.F. petitions for review of an order of the Secretary of the Department of Public Welfare (DPW) upholding the Bureau of Hearings and Appeal's (Bureau) dismissal of his appeal on the basis that his *nolo contendere*[1] plea to the crime of Endangering the Welfare of a Child, 18 Pa.C.S. § 4304,[2] formed a proper basis for a "founded report" of child abuse.

On February 4, 1999, the Berks County Children and Youth Services (CYS) re-

---

1. A plea of *nolo contendere* is treated as if R.F. pled guilty to the crimes charged. *Commonwealth v. Nelson*, 446 Pa.Super. 240, 666 A.2d 714 (1995), *petition for allowance of appeal denied*, 544 Pa. 605, 674 A.2d 1069 (1996).

2. Section 4304 provides as follows:

**Endangering welfare of children**

**(a) Offense defined.**—A parent, guardian, or other person supervising the welfare of a child under 18 years of age commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

**(b) Grading.**—An offense under this section constitutes a misdemeanor of the first degree. However, where there is a course of conduct of endangering the welfare of a child, the offense constitutes a felony of the third degree.

ceived a report of suspected sexual abuse of D.F. perpetrated by her father, R.F. After an investigation, CYS referred the case to law enforcement and assigned the report an "indicated status" as required by Section 6303(a) of the Child Protective Services Law (Law), 23 Pa.C.S. §§ 6303(a).[3] As a result, on February 24, 1999, criminal charges were filed against R.F.[4] and the detective handling the matter filed a CY–73, a "Follow Up on Child Abuse Referral" form, with CYS. That

18 Pa. § 4304.

3. Section 6303(a) of the Law defines an "indicated report" as:

[a] child abuse report made pursuant to this chapter if an investigation by the county agency or the Department of Public Welfare determines that substantial evidence of the alleged abuse exists based on any of the following:

(1) Available medical evidence.

(2) The child protective service investigation

(3) An admission of the acts of abuse by the perpetrator.

23 Pa.C.S. § 6303(a). Pursuant to Section 6336 of the Law, 23 Pa.C.S. § 6336, a central statewide registry is maintained of all "founded" and "indicated" reports of child abuse. *See also L.W.B. v. Sosnowski,* 117 Pa.Cmwlth. 120, 543 A.2d 1241 (1988). An entry of an indicated or founded report of abuse against a person in the central register may adversely affect that person's ability to obtain employment in a child-care facility or a child-care program or a public or private school. 23 Pa.C.S. § 6338.

4. R.F. was charged with four counts of Indecent Assault, 18 Pa.C.S. § 3126; Corruption of Minors, 18 Pa.C.S. § 6301; and Endangering Welfare of Children. In the amended criminal information formally charging R.F. with the above crimes, the District Attorney explained the facts of Count 4, Endangering the Welfare of a Child, as follows:

THE DEFENDANT DID, on or about JUNE 1, 1995, THROUGH OCTOBER 31, 1997, in the County aforesaid, while supervising the welfare of a child, under 18 years of age, knowingly endangered the welfare of said

form indicated that R.F. had been criminally charged. Prior to the criminal trial, the Berks County District Attorney's office extended a plea offer to R.F., in which Count Four, Endangering the Welfare of a Child, would be reduced from a felony to a misdemeanor. On May 1, 2000, R.F. pled *nolo contendere* to Endangering the Welfare of a Child and was given probation.[5]

On May 2, 2000, CYS filed an amended report, changing R.F.'s CY–48 form from

child by violating a duty of care, protection or support, in violation of 18 Pa.C.S.A. § 4304. Grading: F3.

(Reproduced Record at 9a.)

5. At the plea and sentencing hearing, the following exchange took place between R.F., the sentencing court, and the District Attorney concerning the extent of R.F.'s *nolo contendere* plea:

[Assistant District Attorney]: R.F ... do you acknowledge that the Commonwealth would be able to prove the following facts beyond a reasonable doubt at trial, that is, that in the Summer of 1997, on one time, you did while supervising the welfare of a child under the age of 18 years of age knowingly endanger the welfare of that child by violating a duty of care, protection or support? ...

[R.F.]: I think I already answered that, that there was no sexual contact with the child.

[Assistant District Attorney]: Okay.

The Court: There is no allegation of that and nobody's—the Commonwealth's not even offering to be able to prove that. They are just saying that they will be able to prove beyond a reasonable doubt to a jury that in some way, you did not—I'm sorry. What are the—

[Assistant District Attorney]: Did violate his duty of care, protection or support of this child.

[R.F.]: Okay. Yes.

(Reproduced Record at 14a.) Also, the original probation order dated May 1, 2000, required participation in sex offender therapy, in addition to 24 months of probation. However, on May 3, 2000, upon consideration of a motion filed by R.F. for reconsideration of his sentence, an order was filed by the Court of Common Pleas of Berks County (trial court)

"*Indicated*" for sexual abuse only to "*Founded*" pursuant to 23 Pa.C.S. § 6303.[6] After being notified of the change in status on the report of child abuse, R.F., through counsel, requested a review of the report. The request was referred to the Bureau, and following an *ex-parte* telephone call between counsel for R.F. and a representative of the Bureau, R.F. filed a brief in support of his request that the status of the report be changed back to "indicated." By order dated July 20, 2000, the Bureau dismissed R.F.'s appeal for lack of statutory authority. *See* 23 Pa.C.S. § 6338(a). R.F. requested reconsideration by the Secretary of DPW, which upheld the Bureau's dismissal. R.F. then filed a petition for review with this Court on February 9, 2001. Thereafter, this Court issued an order vacating DPW's determination and allowing R.F. the opportunity for a hearing on the issue of whether the *nolo contendere* plea was properly characterized in the "founded report." *R.F. v. Department of Public Welfare (R.F.I)*, 801 A.2d 646 (Pa. Cmwlth.2002).[7]

■ Before a DPW Hearing Officer, on February 25, 2003, the Berks County Assistant District Attorney, who handled the initial criminal case, testified that the criminal case against R.F. was a direct result of the referral of sexual abuse allegations by CYS. He admitted that the Commonwealth did not offer at the time of the entry of R.F.'s *nolo contendere* plea any evidence that would prove at trial that R.F. had engaged in any act of sexual abuse of a child. The Assistant District Attorney also recalled that R.F. did not agree to the entry of a *nolo contendere* plea predicated on an allegation of a sexual offense.[8] The Hearing Officer, finding that the *nolo contendere* plea involved the same factual circumstances as those involved in the allegation of child abuse, recommended to DPW that it deny R.F.'s request to expunge the "founded report." This appeal followed.[9]

---

deleting the reference to sex offender therapy from the probation order.

6. Section 6303 provides, in relevant part:

   "**Founded report.**" A child abuse report made pursuant to this chapter if there has been any judicial adjudication based on a finding that a child who is a subject of the report has been abused, including the entry of a plea of guilty or nolo contendere or a finding of guilt to a criminal charge involving the same factual circumstances involved in the allegation of child abuse.
   23 Pa.C.S. § 6303.

7. In that case, DPW had dismissed an appeal by R.F. challenging the change in his status from "indicated" to "founded" because Section 6338 of the Law, 23 Pa.C.S. § 6338(a), only provides for an appeal from "indicated" reports, not "founded" reports of child abuse. In his appeal to this Court from that decision, R.F. stated that he was not challenging the nolo contendere plea to Endangering the Welfare of a Child but that the plea was not factually sufficient to form the basis of a "founded" report. In vacating DPW's decision and holding that R.F. had a right to appeal, we stated that:

   [I]n a criminal proceeding, where there is an entry of a guilty plea or nolo contendere or a finding of guilt to a criminal charge involving the same factual circumstances involved in the allegation of child abuse, an appeal would "in most instances, constitute a collateral attack of the adjudication itself, which is not allowed." [*J.G. v. Department of Public Welfare*, 795 A.2d 1089 (Pa. Cmwlth.2002).] In this case, though we do not have a collateral attack on the adjudication because the issue is whether the plea was one upon which a "founded report" could be based.
   *R.F. I*, 801 A.2d at 649 (Pa.Cmwlth.2002).

8. William Condron, an investigative caseworker with CYS, also testified at the hearing about the underlying facts that led to the initial investigation of R.F. and the subsequent referral of the case to law enforcement.

9. Our scope of review is limited to a determination of whether constitutional rights have been violated, an error of law was committed, or necessary findings of fact were unsupport-

R.F. contends that DPW's "founded report" entered against him must be expunged because there was insufficient evidence that his *nolo contendere* plea was based upon the same factual circumstances involved in the allegation of child abuse. We agree. In order to maintain a "founded report," DPW requires a criminal disposition against a perpetrator on a charge where the finding of guilt or the evidence proffered by the Commonwealth to which the defendant enters a *nolo contendere* plea is based on sexual abuse. *See* 23 Pa.C.S. § 6303, *supra.* fn. 6. The charge of Endangering the Welfare of a Child does not mandate an inference of sexual abuse, *see* 18 Pa.C.S. § 4304; in fact, to the contrary, Section 4304 is a broad, "catch-all" statute, which has been used in a variety of circumstances, including instances involving non-sexual offenders. *See, e.g., Commonwealth v. Morrison,* 265 Pa.Super. 363, 401 A.2d 1348 (1979); *Commonwealth v. Vining,* 744 A.2d 310 (Pa.Super.1999); *Commonwealth v. Wallace,* 817 A.2d 485 (Pa.Super.2002); and *Commonwealth v. Passarelli,* 789 A.2d 708 (Pa.Super.2001).

In addition, simply because R.F. entered a plea of *nolo contendere* to Endangering the Welfare of a Child, DPW may not infer that the plea was to an act of sexual abuse, especially in light of the colloquy surrounding the entering of that plea. *See supra* fn. 5. In that discussion, R.F. stated that

he did not have sexual contact with his daughter D.F., and the judge responded that "[t]here is no allegation of that and nobody's—the Commonwealth's not even offering to be able to prove that." (Reproduced Record at 14a).[10] Moreover, the Assistant District Attorney admitted that sexual abuse was not part of the factual basis for R.F.'s offering of a plea of *nolo contendere* and, instead, his plea was based upon the generic language that he violated his duty of care to a child.[11] In essence, the sexual abuse allegations remained nothing more than that—allegations. Finally, R.F. was not found guilty of any crime under Chapter 31, "Sexual Offenses," of Title 18, 18 Pa.C.S. §§ 3101–3129, because the one Chapter 31 crime he was charged with—Indecent Assault—was dropped as a result of the plea bargain.

Because R.F.'s *nolo contendere* plea to Endangering the Welfare of a Child lacked any factual finding of sexual abuse, and he was not found guilty of a crime under Chapter 31, Title 18, DPW erred in finding that the *nolo contendere* plea formed a proper basis for a "founded report."

Accordingly, DPW's order is reversed.

### ORDER

AND NOW, this *2nd* day of *March,* 2004, the order of the Department of Pub-

---

ed by substantial evidence. *J.G. v. Department of Public Welfare,* 795 A.2d 1089 (Pa. Cmwlth.2002).

10. The trial court's intention to limit the plea to Endangering the Welfare of a Child to generic facts and exclude any reference to sexual abuse is also evidenced by the motions and orders which followed the sentencing hearing. As explained *supra* fn. 5, R.F.'s original probation order included a requirement that he attend sexual offender therapy; however, that requirement was deleted following the trial court's granting of a motion by R.F.,

wherein he argued that "[a]t no time and in no manner was any fact or inference placed on the record, nor agreed to nor stood silent to by [R.F.] in response to being stated, that defendant was involved, responsible for, or standing silent to an offense of a sexual derivation or nature." (Reproduced Record at 21a).

11. In addition, the District Attorney, in setting forth the charge for Endangering the Welfare of a Child against R.F. in the amended criminal information, did not allege sexual abuse. *See supra* fn. 4.

lic Welfare, No. 21–00–102, CL No. 06–17438, dated April 17, 2003, is reversed.

DISSENTING OPINION BY Senior Judge FLAHERTY.

The issue in the present case is apparently one of first impression and arises when DPW entered a report of finding child abuse when the perpetrator is charged with four counts of Indecent Assault on his female child of eight years, one count of Corruption of a Minor and one count of Endangering Welfare of Children and a plea bargain results in all charges being dropped except the Endangering count, to which a plea of *nolo contendere* is made.

All charges were based on the following Affidavit of Probable Cause by Berks County Detective David B. Wright, who swore that:

An interview was conducted with a female complainant age 12 yrs. Whereby, she identified the above named defendant, as her father, and that during the summer vacation [sic] of her fourth grade into the 5th grade. The above named defendant, told her to go into his bedroom, located at the address set forth above, and to remove the dress she was wearing, and to lie down on the bed, where upon her doing so, the above named defendant began to touch her chest with his hands, and squeezing her breasts, and touched her vagina with his hands and put his finger inside her vagina, causing the female complainant (age 8 yrs) to feel pain, whereby the female complainant told her father "to stop", all of which caused the above named defendant, to strike the child about the head with his hand, and continued to keep his finger inside the female complainants vagina. The above named defendant, told the victim, to get dressed after the assault.

That on or about the time period set forth above, namely the summer vacation period 1995, the above named defendant assault the female complainant on two or more occasions in the same way.

And that, the above named defendant, while having the victim on a fishing trip, at a nearby lake, in the county of Berks, pulled the female complainant aside, from the others on the trip, and began to touch and squeeze the victims breasts, all of which caused the victim to experience severe pain and discomfort. R.R. 6a

Undisputed testimony and documentary evidence established before the Bureau that a child abuse investigation of several incidents of sexual, not physical, abuse by the Appellant, was referred to the District Attorney of Berks County. The District Attorney prosecuted the Appellant only for the sexual abuse of the subject child. The affidavit of probable cause attached to the criminal complaint filed against the Appellant, as do all the charges contained in the criminal complaint, speak to sexually based offenses.

Based upon that criminal complaint, filed by Detective Wright, which described several incidents of sexual abuse, the District Attorney filed a multi-count information. A criminal information incorporates the allegations of the criminal complaint in "a plain and concise statement of the essential elements of the offense substantially the same as the offense alleged in the complaint" 234 Pa.Code § 560(5). [T]he issues at trial shall be defined by such information." 234 Pa.Code § 560. In the *nolo contendere* plea, the District Attorney amended the information by reducing the charges, but *did not amend anything concerning the underlying, sexual nature* of the offenses:

Mr. Stackow: I apologize for not doing so sooner. The Amendment is, on Docket No. 1336/99 ... the Commonwealth would move to change the grading of Count 4 from a felony of the third degree to a misdemeanor of the first degree.

As a result of plea negotiations, the Appellant struck a bargain with the District Attorney to amend the information, to allow him to take responsibility for one act, to permit a general plea, which would avoid specific reference to sexual contact with the victim, and apparently avoid exposure of the child to a court appearance before a jury. After the Court accepted the plea of *nolo contendere*, it removed the requirement that the Appellant attend sex offender classes. No term of the plea of *nolo contendere* touched upon the status of the indicated report.

Despite the Majority's position that this colloquy changes the complexion of the underlying factual transaction, the sole focus on this appeal is whether this plea involved "the same factual circumstances as those involved in the allegation of child abuse." 55 Pa.Code § 3940.4. While the charge of Endangering the Welfare of a Child is a general charge, the lack of a remand as to specific facts begs the question of what duty of care, protection, or support the Appellant violated. While the criminal complaint contains some evidence of physical abuse, it occurred as an integral part of sexually abusing the subject child. The hearing record indicates the prosecution of the Appellant arose solely from the child abuse investigation. The testimony of the prosecuting attorney, Mr. Stachow, indicated the sole focus of the prosecution was the Appellant's abuse of the subject child, as discovered by the child abuse investigation. The District Attorney further communicated that the colloquy attempted to obtain a *nolo con-*

*tendere* plea without a specific allotment to sexual abuse of the subject child. Reduction of the severity of the charge and framing it in general terms does not alter the factual circumstances or the conclusion that the criminal charges arose of an indicated child abuse report, and the *nolo contendere* plea derived from the sexual abuse of the subject child.

Here, the burden is on DPW to prove the Bureau had substantial evidence that R.F.'s *nolo contendere* plea was based upon the same factual circumstances involved in the allegation of child abuse.

Child abuse is defined:

(b) Child abuse

(1) The term child abuse shall mean *any* of the following:

(iv) ... the failure to provide essentials of life ... which endangers a child's life or development or impairs the child's functioning.

23 Pa.C.S. 6303(b)(1)(iv).

All of the allegations in the criminal proceeding related to sexual abuse, including the severe physical pain experienced by the child while the perpetrator was alleged to have inserted his finger in her vagina while beating her in the head. How can such action not be endangering the child's development or impairing the child's functioning.

Amazingly, apparently to expedite disposing of the case, the District Attorney and defense counsel advised the trial court that "sexual" conduct was not involved and that was accepted.

Since there were no other allegations of criminal activity in the criminal complaint upon which the District Attorney's information was filed other than sexual, it was an abuse of discretion for the trial judge to so conclude the possible explanation for the criminal court result is that everyone involved agreed that such conduct is not

sexual because it did not involve sexual intercourse. I disagree.

DPW in finding child abuse here should be permitted to look further behind the facts involved in the *nolo contendere* plea, rather than be limited to the colloquy of counsel and the court at the criminal trial as the majority opinion restricts.